Good morning, your honors. I made a police in court. When officer Escobar and the other officers arrived to the Oak Ridge apartment complex in the middle of the night, here's what they knew. They knew that Oak Ridge was notorious for violent behavior and that they previously responded to calls for service there before. They knew that security guards had requested police assistance due to suspicious behavior involving a white Buick by the maintenance shop. They knew the maintenance shop was an area that only maintenance vehicles were allowed to park and that the Buick moved to a different location prior to officers arriving on scene. Was there any factual determination made in the district court that the vehicle was trespassing or improperly parked? The court said, your honor, in footnote two of the order, that there was no improper parking or that the officers were not concerned about trespass. I don't think we can consider that as a factor in our analysis, can we? The trespassing, I think that is true, your honor, but the movement of the vehicle is something that this court should and could consider. In addition to the movement of the vehicle, officers knew that there was a black male wearing a white T-shirt and jeans in the vehicle with multiple people present, that he had a gun and that he had previously been swinging the gun around. I'll stop you one more time. I believe there was a factual determination that he displayed the weapon, and so I think we have to go with displayed rather than swinging. I would disagree, your honor, and if the court views that as a factual finding, I would think that that finding is clearly erroneous, given the very clear statement live and in person on the body cam that the person had been swinging the gun around. And the district court, I think in its factual determinations, does use, does even does that in the analysis, but then in ultimately analyzing the issue, refers to the act of swinging as display of a gun. In addition to the swinging, though, Officer Escobar, when he arrives on the scene and Officer Purcell arrives on the scene, moments later, the Buick begins to back up and leave the area. And at that moment, Officer Escobar had to make a split second decision. And he made an eminently reasonable decision to stop the vehicle and supported his stop. And we'd ask this court to reverse the district court's ruling to the contrary. The first part of my argument this morning, I'm going to focus on the factors supporting reasonable suspicion. And contrary to the district court and the defendant in his briefing, this is not a case about mere firearm possession or mere firearm display. And I'll point you first to a case from this court called Hightower, because it is somewhat similar to the facts present here. In Hightower, the officers had received an anonymous phone call of a disturbance at the Boys and Girls Club in a high crime area. They respond to the scene, treat it like an emergency, but there's no emergency when they arrive. Instead, across the street, they see a large group of people. And when officers arrive, the group disperses and they see two individuals get into a vehicle and begin to leave the scene. Officers stop the vehicle and this court held on those facts, given the totality of the suspicions supported that stop. And here, the facts are even stronger. There's at least seven considerations supporting reasonable suspicion. First of all, you have three officers on scene, two of whom testified at the suppression hearing. Those officers, Escobar and Purcell, had roughly five years of experience. They testified that both of them had conducted countless traffic stops previously, and they had firsthand knowledge and responses at Oak Ridge previously. The second factor is the high crime nature of the apartment complex and the fact that these events occurred at night. We're not dealing here with an amorphous high crime area. We're dealing with an apartment complex where in the preceding six months leading up to this event, over 300 calls for service were requested. Those involving violent crimes of all types, including shootings, fights, burglaries and robberies. And at page 51 of the transcript, Officer Escobar says that the high crime nature of the complex was something he was considering. The third factor is that given that violent behavior, the complex actually takes some remedial action and hires security to help police the complex. And it was those security guards, three security guards that night at least, who were actively involved and actively pointing out things to law enforcement. And Officer Purcell at page 21 of the transcript said he was aware that security guards had been hired and were working at the complex. Those guards were so concerned about the conduct they saw that they placed a call to police for assistance. You say so concerned, but it wasn't a 911 call, was it? It's the testimony from Officer Purcell, Your Honor, is that it was a 911 call. The district court refers to the call as a call to police or a call for assistance. It's not paramount for this court to resolve that. I don't think that matters at all. The cases are pretty clear. A call for a general call for assistance can in and of itself support reasonable suspicion. OK. And there was talk a minute ago about the displaying of the weapon. That came from the call from the security guard, correct? It initially and then also from the security guard on the scene as well. So the security guard who placed the call said there's a white Buick by the maintenance shop. There's a black male wearing a white T-shirt and jeans and he has a gun and he was. OK, that's my question is what was relayed to the dispatcher about displaying it? Was it swinging? Was it just displaying? And then what was relayed to the officer? From my recollection, the dispatcher was only told about display that he had a gun and then he entered the Buick. When Officer Escobar arrived on scene, he has a brief conversation with the security guard who testified at the suppression hearing. And that security guard told him one of the male individuals was swinging it around. We saw it on video. And so that's where the swinging comes from. That call to police, I'll go back there, is in and of itself something that supports reasonable suspicion. The call in this case is reliable. It's an identified person. It's even doubly reliable here because it's a person tasked with ensuring the security of this apartment complex. It's a recorded call. And the caller even says we've been observing this behavior on video, which would be another basis for the reliability, ultimately, if officers needed to investigate further. In addition, the caller provided a detailed and specific description of the suspect and the vehicle and the location. And then in close geographic and temporal proximity, officers respond and are able to corroborate some of the information provided. Most importantly, the existence of the white Buick on scene. Counsel, the concern I have with the district court's analysis is whether they complied with the totality of the circumstances test, rather than looking at the factors in isolation. And you did a very good job of addressing that in your brief. But I think this is a very important case. It's not unlawful in this jurisdiction, at least, to open the carry firearm. It's not unlawful to carry it late at night or in a high crime neighborhood. How do we make sure that we're not making every person exercising their Second Amendment rights late at night in a high crime neighborhood subject to Terry stops? I think that's a valid concern, Your Honor. And I think the district court went too far in addressing that concern. I think the majority of courts that have addressed this issue, in fact, I think all of the courts that have directly addressed this issue, the Fourth Circuit in Perkins and Walker, the Sixth Circuit in Whitley, the Tenth Circuit in Connor, have all held that innocent gun possession or gun display, although cannot standing alone raise reasonable suspicion. It can be a factor supporting reasonable suspicion. And I think that is what that's the correct way to square the Second Amendment concern with the Fourth Amendment concerns and with Terry and the reasonable suspicion standard generally. The district court here really focused on just one factor, and it was that lawful possession and the change in Iowa law. And as a result of that, and the defendants echo this in his brief, the district court and the defendant don't mention the experience of the officers in analyzing this case. They don't mention the security guards. They don't mention the call to police. Perceiving the experience of the officers has to be in the context of a particularized factor, not just, hey, I'm experienced, therefore I get to stop people. I think it's both. But in this case, we actually have particularized knowledge on the issue on which the district court was focused. And so I'll go there now. So the effect of the district court's position here was to ignore the officer's familiarity with the complex and the training and experience on the exact firearm law the court was concerned with. So at page 53 of the transcript, Officer Escobar testified he was familiar with the law, which makes sense because it had been in place for roughly 14 months prior to this incident. He says he's received training on the law and notwithstanding that training and familiarity, he believes there's reasonable suspicion to stop the vehicle. And I think what the district court did here was give no weight to his conclusions based on his training and experience, his familiarity with the inhabitants of the complex, the district court's ultimate conclusion, but also really enforces here the district court essentially raising the bar. And what the court did, and this is clear from several portions of its order, in the very first paragraph, the court refers to this change in Iowa law. At page 8 of the order, the district court says prior to this change in law, you would have had reasonable suspicion, indicating that only the change in law is really the reason it may or may not exist. And then it says at page 9 of the order that reasonable suspicion boiled down to one fact, and it essentially relied on the carrying weapons statute, the criminal code, which says carrying weapons now is only a crime if you carry a weapon and use it during the commission of the offense. And so in its order at page 9, it says essentially gun possession cannot support reasonable suspicion unless it is also being used to commit a crime, but that's not the Terry standard. And it's not... So what are the other factors that should be considered here for reasonable suspicion for a Terry standard? So continuing the seven I was highlighting, I've covered the experience of the officers, the experience of the guards, the call for police that night, the high crime nature of the complex. The fifth and sixth factors are the vehicle's movements. OK, that's one I do have a problem with. You characterize in your brief as attempting to leave the area, unprovoked, effort to move and evasive. The car was parked there for, well, they didn't attempt to leave until 20 seconds after the officers arrived. Why is that indicative of criminal behavior? I think it, so it left around, or it started to move 20 seconds after Officer Escobar arrived. It was, it left even in a shorter time after Officer Purcell arrived. And Officer Purcell had an angle that made it look like the occupants would be more likely to see him. So I'm not actually sure when. What I'm really asking, is there any precedent for the proposition that simply pulling out of a parking spot is a flight? There is, Your Honor. I'm not aware of it. There is, Your Honor, Hightower, which is a case I referenced earlier. Judge Shepard wrote that opinion. In that case, the vehicle began moving. That was a ground for reasonable suspicion. I point you to Perkins, a Fourth Circuit case, which has very, very similar facts to the case here. We also said that people are free to leave, even if they're being questioned by police, absent reasonable suspicion. So how can we say, on the one hand, that freedom to leave means you're not seized? And on the other hand, well, if you leave, then it's evidence of a crime. I think in this case, Your Honor, the importance is, and in any reasonable suspicion case, is the amount of suspicion that attaches to the act. And so here, you know, they weren't able to pull a 180 and drive away. They had to back out. So you don't have the clear evidence of flight that maybe you would if I'm walking down the street, I see an officer and I turn directly around. But I think it's here, again, relying on, you know, Kansas v. Glover that describes kind of the practical considerations, that this is a consideration that can be factored into reasonable suspicion. Now, I do think the vehicle movements can be completely ignored by this court and there would still be reasonable suspicion to support the stop. But I do think this court should consider them. And Officer Purcell testified that the call from the guards was about someone going from And so I think it's clear he was concerned about the movements. Let me ask you, the Terry stop requires reasonable suspicion of criminal activity afoot, so to speak. What would be the criminal activity here? Well, I think, Your Honor, it can be criminal activity generally. But here we have assault and harassment. And I'd like to save some time for rebuttal, but I'll at least mention a few cases here from this court, Thomas, Miller and Anderson, where this court found by a preponderance that assaults had occurred. And Thomas may be the most extreme and that's the one I'm going to point you to. And in that case, an individual walked into an apartment for two seconds holding a gun down by his side and he left almost immediately. And this court held by a preponderance that that display was enough to constitute, by a manner. And we think those three cases, harassment, the case of Bradford, which is cited in our brief, would also show harassment here. But all of those cases, I think, would show that there is grounds that an assault occurred here. There were multiple people present and a gun being swung or displayed in a manner that caused the guards to call for help. Are we allowed to consider potential harassment or menacing given the district court's finding that it was a display? Unless we find that it's clearly erroneous. I think you are, Your Honor. The harassment statute under Iowa law just requires somebody to, you don't even need a dangerous weapon for harassment to occur. You need somebody to purposefully and without legitimate purpose to have personal contact with intent to threaten or alarm or intimidate another. And personal contact just means visible proximity. What objective, particularized facts support? I think the fact that there's multiple people present, there are, and the guards know that and that's been communicated to police. An officer escrobar sees that as he's effectuating the shot or the stop, corroborates that. Coupled with the display of a firearm is enough. And in Bradford, the case cited in the government's brief, there's a group of individuals in front of a home and it's not clear from the opinion who has the gun and who made the threats, but Bradford did none of those things. And Bradford, the court said, there was probable cause to stop him that night, at least for aiding and abetting, because he was present when a gun was present near others essentially and threats were being made. And so, although we don't have evidence of threats being made here, again, the reasonable suspicion standard is something beyond an unparticularized hunch. And I think here we have that. Mr. Ashley, we'll give you a minute in rebuttal. Thank you, Your Honor. Good morning, Your Honors. I'm Andrew Gravey. I'm representing Mr. McMillian and may it please the court. As the district court found below, the government did not show reasonable suspicion of a crime to justify the stop here. And the questions that the court was just asking Mr. Ashley now really get to the heart of the issue is reasonable suspicion of what crime, what criminal activity. I'd like to address one thing that Mr. Ashley stated during his argument at the start. There has to be some criminal activity. It can't just be criminal activity generally. If that were the standard, what we're talking about then is inchoate and unparticularized suspicion or hunches. There needs to be something that the government can point to. And in the Jones case, this court, it said that it was remarkable that the government couldn't point to anything before the district court that there was a criminal activity of. This district court grappled with that question of reasonable suspicion of what? Of what criminal activity? And it considered reasonable suspicion of loitering, reasonable suspicion of trespass, reasonable suspicion of an assault through the display of a firearm in a threatening manner toward another individual. And it found that there was not an articulable basis for reasonable suspicion of any of those crimes. How about potential breaking and entering? You've got someone driving around in an automobile at four o'clock in the morning in an apartment complex moving from place to place. You have a call saying, hey, he's got a firearm, he's displaying a firearm. Isn't that enough for reasonable suspicion of, you know, maybe he's going to break into an apartment? Well, first, it is important that this is a residential apartment complex. And that fact distinguishes this case from another like Trogdon, for example, where there was a commercial complex where law enforcement officers were aware there had been breaking and burglary activity. This is a residential apartment complex where people are about at four a.m. in the morning. And first, the government hasn't argued, as far as I'm aware, that there was reasonable suspicion of any burglary here. Their argument is based on, to this court, that there's reasonable suspicion of either an assault through the intentional pointing of a firearm toward another or the display of a firearm in a way or another, or harassment where there's personal contact to threaten or alarm. Given the facts and the factual record that was presented to the court, there's no reasonable suspicion of either of those crimes. And I'd submit there's also not reasonable suspicion based on the information that was given to law enforcement officers for any burglary or similar breaking and entering type activity. The factual findings are important for this court because the court must review those for clear error. And in pages one to three, and then also in eight to ten of the court's opinion, it made certain factual findings related to some of the factors that the government discussed that are important. And they're important for context and also content. For example, that phone call that was made that initiated all this from the Oak Ridge Department security officer to the Des Moines Police Department dispatch. This was not a 911 call. I know that there's testimony from the officer that it was a 911 call, but no one at the district court level believed this was a 911 call. And the district court found that it was simply a call to police. It simply doesn't matter. But at the same time, it is one aspect. And the court can review Exhibit A and determine for itself whether this was a 911 call or not. Why wouldn't, though, trespassing and loitering be legitimate things to investigate? Given that this car was occupied by several people and moving around a residential facility, why wouldn't it be at least reasonable for the officer to think this car doesn't belong to this residential facility? Well, it wouldn't be reasonable because the security officers in the phone call and then also when law enforcement approached, gave law enforcement officers no reason to believe that those individuals did not belong there. And that's actually a fact. But the mere fact that they call suggests they think something is out of place here, right? Well, something, yes. And that's an inchoate, unparticulated suspicion or hunch. The fact that the vehicle had moved and the fact that law enforcement had called does not provide reasonable suspicion for any crime, any crime with use of the weapon. And the weapon was what the security officers said they were concerned about. And it's what the law enforcement officers said they were concerned about, too, the fact that there was a firearm present. Officer Escobar testified that he was concerned about community safety. But my recollection is Officer Escobar never actually identified any crime that he believed there was reasonable suspicion of. Ultimately, the subjective beliefs of the officers are not what's important here. It's whether the government has shown, in response to our motion for suppression, an objective and particularized basis for criminal activity. And I'd submit they have not done so. This court must review the district court's finding that Mr. McMillian simply displayed the firearm for clear air. And there is no clear air here with that factual finding. The district court, in making that factual finding, was reviewing Exhibit A, which is the phone call from the security officer. And that security officer was asked directly, well, was he, like, threatening to use it? And the security officer never said that. This is a security officer who certainly has had some minimal level of training. And it doesn't take someone with even security officer training to know that that'd be an important fact or an important aspect of the interaction that you're watching on security camera to report if it were, in fact, going on. When Officer Escobar approached in the scene, he met with another security officer, Mr. Bantz. And what Mr. Bantz said is important for this court's consideration, was important for the district court. But what Mr. Bantz said was, there's an individual in the car. We saw him on security camera with a gun in his hand. He was swinging it around. Now, the government has focused on the one word, swinging. There's a significant difference between someone saying that someone is, quote, swinging exclamation point, an object, and someone saying more mundanely, he was over there, we saw him swing a gun around. And that's what you hear on Exhibit C. And this is what the district court reviewed. And there's no clear error in the district court's factual findings that Mr. McMillian had simply displayed the firearm. I'd like to go back to Judge Grunder's question regarding trespass. It seems to me that the call from the security guards of the complex is significant because no one would know better than they would about who should be there, who shouldn't, who's suspicious, and who's not. What about that factor? Certainly. But the security officers are also there to report on their own residence. And the security officers gave no indication at any point in the phone call or in the interaction with law enforcement before the seizure and stop by Officer Escobar that any of these individuals did not belong. And that's a factual finding by the district court that's also important for this court's consideration. The court discusses it in a footnote, seemingly understanding that the government at the beginning had conceded, at the beginning of the suppression hearing, the government conceded that they did not have evidence that any of the law enforcement officers knew that any individual there did not belong. That's a footnote. Well, the district court discusses it in a footnote, but it's also discussed, I believe it's on page three of the suppression transcript, where the government's did not have information regarding whether any of the individuals in the white violet belonged on that scene. They didn't have any information that they were residents or not residents. And you can't create reasonable suspicion out of the absence of information. Well, what about, they didn't just pull up and go into an apartment.  Isn't that kind of suspicious? Well, they were moving from one parking spot to another. And this is, again, a residential parking lot with multiple people there who maybe all of them are all residents. And so there's the possibility that they were simply moving from one spot to another because they were first near apartment 405, as one of the officers said, and that's where one of the residents was. And they later went to, that's where one of the residents lived. And they later moved to near another residence. But there's no reason to believe that any of the individuals did not belong or that the vehicle was illegally parked. And the district court found there was no information that suggested that the vehicle was illegally parked at any point. The fact that carry and display of a handgun, even at that, at this time of night that we're talking about and in a high crime area, is not in and of itself illegal. Does that insulate it from being considered as a circumstance in the reasonable suspicion determination? Well, Your Honor, it doesn't isolate it from being considered. And I think your question is getting to the next thing that I want to address is whether there was a divide and conquer approach. Whether the court dismissed certain facts and said that it was not going to consider them. We've submitted in our brief that fairly read, the district court's opinion did not employ a divide and conquer approach. What the court did is it discussed time and place and discussed what could have been meant by swinging a firearm. It discussed those in consecutive paragraphs, just like the government's brief in Well, it's legal to openly carry now in Iowa. And therefore, there's no reasonable suspicion. I mean, it did seem to place a great deal of emphasis on that. Well, what it concluded was it's not just the open display. The open display of a firearm is not a crime in Iowa. Following the amendments to 724.4. Let me give you a hypothetical. A report comes in of an armed robbery on the 800 block of First Street. And but no description of the person. Police arrive. There's somebody with an open carry gun there. You know, they arrive within a minute. Do they have reasonable suspicion? I mean, he's allowed to carry the gun. They don't have a description. Is there reasonable suspicion to stop that person? With there's a couple of factors that may factor in here, for instance, proximity. The person's right outside where the armed robbery was. That would be a different situation because then the person is so close to the armed robbery that there would be reason to believe that they were involved. However, if they were a few blocks down the way, there may not be reasonable suspicion because in that instance, what you have is an individual who you don't know is associated with any criminal activity. And there's a distance between them and the criminal activity. And they have a firearm, which is lawful to possess. The issue here is the district court did not simply just say open possession is legal, so there's no reasonable suspicion here. What it noted was that for there to be reasonable suspicion, there must be some articulable basis for concluding that the possession was connected to a crime. And it was connected to either the use of the firearm, which is still a violation of 724.4, or that the firearm was used in a way that's threatening toward another individual, or that it was being used as harassment. Without more, Duffy is controlling. And the district court found that the Duffy holding was nearly squarely on point. Your Honors, I did want to note just one final thing about the Arvizo argument by the government about whether the district court had employed a divide and conquer approach. The language that the district court used did not suggest a divide and conquer approach, and in fact, it was very similar to language used by this court in other cases, where it says, for example, in Jones, that certain innocent factors contributed nothing to reasonable suspicion. Or like in Sykes, where the court said it was giving no weight and would not consider in the reasonable suspicion calculus whether the individual had avoided interaction with law enforcement. Given the factors here that the government points to, there is not reasonable suspicion of criminal activity. And we'd submit to this court that it should affirm the district court's opinion. Unless the court has further questions for me. Thank you, Mr. Gregory.  Thank you, Your Honor. Counsel Levy, go ahead and start off. Is the government relying solely on harassment and menacing as reasonable suspicion of that crime, or is there some other crime that there may be reasonable suspicion of here? I think, Your Honor, based on the totality of the circumstances here, there's reasons to think the officers were concerned about the movement of the vehicle, the loitering, the trespassing. It is true the government conceded there was not enough to establish a criminal trespass occurred. The government did not say the officers were not concerned with the movement. Reasonable suspicion of what? I think it would be assault, harassment, trespassing, loitering, everything that has essentially been covered. I would agree that burglarizing probably was not something they were concerned about, although I think your point is, I've got a lot to say very quickly. Officer Escobar, at page 51 to 52 of the transcript, said swinging a gun is not normal lawful behavior. He said displaying a gun is not normal lawful behavior. Displaying it openly was what he said, which I interpret to mean beyond its holster. Going back to the question you asked earlier, Judge Gross, reasonable suspicion can be supported by the possession of cash, scales, pocket baggies, all types of things that it's lawful to possess, just like a gun. And then the last thing I'll say, if the court would give me this opportunity, Mr. Gravey's argument today is an exhibition on the divide and conquer analysis of looking at factors and saying, it's not illegal, it's innocent conduct. It's not illegal, it's innocent conduct. That's what the court did at footnote two. It said the conduct that the officers were stating about movement around the apartment, this is not illegal, but that doesn't mean it cannot factor into the reasonable suspicion analysis. You don't need to exclude the possibility of lawful activity. And here, based on the totality of the circumstances, there was enough for reasonable suspicion and this court should reverse the district court. Thank you, Your Honors.